Council, good morning, of course. So nice to see all of you. I just want to make sure that I have the correct time allocation, okay? So I have Council, Ms. Christ-Perpellin, 10 minutes, is that right? Yes, 10 minutes. Okay. Ms. Occolino? Yes. Is that right? Okay. That's what happens when you grow up in the Bronx. Five minutes? Okay, great. Ms. Scott, eight minutes? Correct. And Mr. Schneider, seven minutes? Yes. Okay, great. Thank you all. And we'll hear from whoever's going to start. Thank you. I, too, also, before I start, would like to say that about over two decades ago, I was a moot court participant at Cardozo in the entertainment moot court program, and I don't know that I can redo the job that I did there, so I'm hoping I can. Well, I'm confident that the years have been kind and that you will be stupendous. I hope so. Your Honor, we actually have two issues in this case. Appellant on appeal is appealing, first of all, the dismissal of his ADEA claim based on failure to exhaust administrative remedies. Now, in pleading failure to exhaust administrative remedies, what Mr. Hildebrand went through with his EEOC filing is a condition precedent under Federal Rule 9c. And Federal Rule 9c calls for a general pleading. What Judge Schwab down at the district court stated was that, no, we really had to plead all the details, when he went to the EEOC, when he filed with the EEOC. Let me say, as far as I'm concerned, you do not need to persuade me that Rule 9c covers the situation where you're saying I fulfilled the... Okay. So, I don't know. Okay. So, then we move on to the other issue with that dismissal, which is the 300-day question, where Mr. Hildebrand, when he first approached the EEOC, filled out a questionnaire, which is the regular course with the EEOC office in Pittsburgh. And that questionnaire was filed well within the 300 days of the identified appeal. It says that's adequate notice. And that's adequate notice. And so, we were dismissed based on those two reasons. So, that is really why we filed the appeal. What about Allegheny County, though? I mean, Allegheny County wasn't named in the questionnaire. Allegheny County was not named in the questionnaire. But if we look at the charge, the charge of discrimination, when he went back for his official meeting with the EEOC, it's Appendix A-159, Mr. Hildebrand's charge of discrimination. If you look at the instructions on the form, the first thing a party is to do is to name the employer, and then it says if there are more than two employers, list under the particulars below. And if you look under the particulars below, Paragraph 1, he starts by stating, I started my employment with the County of Allegheny, and I worked in the District Attorney's Office. I think if you look at the, if you go back to the questionnaire, Mr. Hildebrand also attached a pretty lengthy, he was not represented at that time, he attached a pretty lengthy statement as to his charges. And clearly in that statement, it also indicated that he was employed and paid by the County of Allegheny. And he put on the questionnaire, didn't he, Allegheny County District Attorney. He did put Allegheny. All in one line. Yes, in the one line he did put the District Attorney. Yeah, but I thought the question was about Allegheny County. But Allegheny. As a distinct entity. Yes, yes, the District Attorney of Allegheny County is what he. Well, he put first, Allegheny County District Attorney. Yes. Yes. So that could be some notice that he considered Allegheny County his employer. Yes, exactly. And what he also attached to the questionnaire, which is in the appendix, is a lengthy statement where he does delve into his employment and that he was. Let me ask you a hypothetical then, because I'm confused about something. So let's say we do, as you request, with regard to the intake questionnaire, we say the intake questionnaire is timely, and obviously the reason you'd want us to rule that is that the charge, you know, based on the 300-day calculation would be untimely, right? So let's say that it, you know, it wasn't as clear and the lines aren't as blurred as they are here. And it wasn't Allegheny County on the one hand and Allegheny County DA's office on the other. Okay, let's say it was Allegheny County and the Lincoln Hospital, right? So and Lincoln Hospital is mentioned in the intake questionnaire, right? And Allegheny County is not, right? But the proper parties are mentioned in the charge. Well, based on what you've just asked us to do, we can't look to the charge. We should be only looking to the intake questionnaire, shouldn't we? That's correct. The intake questionnaire, Your Honor, the issue here is, I think, notice. The broader question is, did Allegheny County, through the filing of the questionnaire, have notice? And I believe the record does show that they did have notice in terms of the questionnaire, because it does appear that, I believe, the questionnaire, well, the questionnaire wasn't sent to them, but the charge would have been sent to them. So we're supposed to impute notice to the county because the employer was the county DA's office? Yes. And I believe if you look at the documents on file, you will, on record, you will see that his employment, his dual employment, and one of the more important points is that he was paid by the county. He wasn't paid. The district attorney's office did not issue a paycheck for Mr. Hildebrand for his detective work. It was the county that issued the paycheck. So there is, the record clearly shows that there is a clear closeness and that he was dually employed by both entities. If there's no further questions on that, there is the other issue of the 1983 claim. You know, one of the things that interests me most in this case is whether an ADEA claim can be brought under 1983. Yes. Yes. And that is a question that there is a circuit court split, Your Honor. Well, it's sort of like, ten to one, isn't it? Yes. It's actually now, I think it's, the Madigan case was dismissed after oral argument by the Supreme Court for being improvidently granted, for cert being improvidently granted. But, so that takes us back to looking at the Levin versus Madigan case at the Seventh Circuit level and why did they determine that you could have an ADEA case also with a 1983 claim. And the difference between Levin and the Seventh Circuit and the other circuits is that Levin's decision, Seventh Circuit, came after the Supreme Court's Fitzgerald versus Barnstable School Committee case, that's a Supreme Court case, where in Fitzgerald the Supreme Court determined it wasn't ADEA, it was Title IX. But when they did a comparison of can you have a Title IX case also with a 1983 case, they determined that you could because what they were looking for were things like, were the protections in the Act, in that case Title IX, the same protections as constitutional protections that would be guaranteed by Section 1983. So the Levin versus Madigan case, which is the Seventh Circuit case, looked at, after the Fitzgerald case, looked at that particular standard that the Supreme Court had issued and said, no, with the ADEA there are different protections being offered than what is offered under the 1983. And so our argument is that after Fitzgerald versus Barnstable, that there is a different standard. And the question is, does the ADEA provide different, it could be more narrow, it could be broader protections. And our argument is that yes, it does. But you still need a customer policy to impose liability on the county or the DA. Yes, well, the DA is out in terms of the 1983 case. So we conceded that issue. You still need a customer policy. Yes, that's right, that's right. And that is the issue that the district court found that we did not plead enough in terms of persistency of the behavior or, let's see, persistency or persuasiveness, pervasiveness. Who else was the victim of this policy to discriminate against elderly people? Yes, Mr. Hildebrand identified in his complaint, he identified three employees by name that were forced out under the plan. There was an admission on the part of his employers that they had forced out older employees. The complaint is full of allegations of, you know, that the older employees could not act as detectives, that they didn't have the modern skills, the computer skills to engage in adequate detective work. So it's our argument that we clearly pass muster for a motion to dismiss on the custom and practice angle of it. And that really is the only point that the district court dismissed the case on that basis. And with that, I am out of time. Thank you very much. May it please the Court. My name is Anna Well-Occolino for the EEOC as amicus. It appears that this Court doesn't need too much convincing about our primary legal arguments as amicus, which were that the Iqbal-Twamblee standard doesn't apply to pleading conditions precedent. So there's no need for a plaintiff to plead specific dates in his or her complaint. And we also hope that you might clarify that a plaintiff need not attach a charge or right to sue notice. Well, since the plaintiff filed the first amended complaint, when the district court said the conditions precedent don't meet Iqbal, so he filed the first amended complaint and added all that additional information. Since he did that, can we really look at opine on the issue of whether the condition precedent under Rule 9c needs to be itemized, the fulfillment of the condition precedent? I think that you could. I mean, it's our view that the amended... Should it be dictum or should we just throw it in there so it would be... We would like for you, honestly, to throw it in there. We don't give advisory opinions. Well, we'd like you to clarify. I think it's still before you because our view is the amended complaint standing alone suffices under Rule 9c. And then where the plaintiff got into trouble, according to the defendants, of course, is by attaching the charge. And then the defendants and apparently Judge Schwab thought that he had pled himself out of court. So I think you could still talk about it in the context of, is the amended complaint standing alone sufficient? It seems like it is under Rule 9c. And then talk about, was the plaintiff... Did he plead himself out of court by attaching the charge? And if that answers your question, I'd like to talk about that narrow question. Did he plead himself out of court? And I think that the answer is no. The district attorney has gone so far as to say it's a judicial omission to attach the charge to the amended complaint because the charge, we all seem to agree, is not timely. But I think the response is no because there's nothing inconsistent in concluding that the charge which was filed January 11, 2012, that that was a charge, it was on a Form 5 charge met the criteria. And also concluding that the intake questionnaire filed on December 1st constituted a charge under Holowecki, and we all agree that it was timely. So I don't see that there is a judicial omission, a contradiction that needs to be resolved. But even if this court, for some reason, thought that that was a judicial omission, we think that the argument the defendant is trying to raise doesn't work because this court said in the Schomburg versus Dow Jones case, which we cited, that it is okay to amend a complaint to cure a purported factual mistake and even a judicial omission. So this court said plaintiffs routinely amend complaints in order to correct factual inadequacies in response to a motion to dismiss. So we think at a minimum, to resolve this case, it should be remanded to the district court to allow the plaintiff to amend once again to include the proper date, although we don't think that that's the original standard. But to get back... Go ahead. Let me ask you. Have you read your intake questionnaire? Yes. And it starts out, filing out and bringing us or sending us this questionnaire does not mean that you have filed a charge. Correct. Because sometimes a plaintiff will fill out an intake questionnaire. It doesn't meet their criteria. And the most important thing the agency has done since the Holowecki decision is to add those two boxes at the end of the questionnaire. And that tells the plaintiff, we call them a potential charging party, you know, if you check box one, we won't treat it as a charge. But if you check box two and you tell us you want us, you're authorizing us to act and you know that we're going to notify your employer within 10 days of the charge, then we treat that as a charge. Don't you think your questionnaire could be a little more clear on, I don't, you know, I guess in saying that you may not, this may not be considered filing a charge. You may prefer that the questionnaire be tweaked a little more, but I can tell you personally because I worked on this issue, it took a long time to get even to the boxes. And we hope that that was a good way to capture because many people come to us and what they complain about is not something that we can help address. And then they face retaliation because if it is a charge, we must send notice within 10 days. So ideally, we like people to come into the office to sit down and talk with them about it before we make something into a charge. So let me ask you this. If we were using this form, or I'm sorry, if this form were applicable to this case and the correct box was not checked, I presume you'd have no argument. That is correct. That is the route the agency took after Holowetki. And I think the court was clear in telling the agency that we needed to find a way to sift through these things over on one side of the fence or the other. But this case, this questionnaire before you, it's very clear. It was extremely detailed, had all the information required by the regs, and he checked box number two. It was a charge. Well, let me ask you this since you're here and there's still a couple seconds left. Why isn't the way it would appear that we'll be interpreting this inconsistent with Twombly? Just theoretically, why – Twombly is asking for more specificity. Here it would seem to follow the 9C and conditions preceding, we're not adhering to that requirement of more specificity. Well, I think that Rule 9C specifically just speaks to conditions precedent, the timely filing of charge and the right to sue, and that's in a different category than pleading a claim for relief, which would more go to the facts of the claim, whether you could survive under Rule 8. All right. Thank you, Your Honors. Okay. Thank you. I take it you'd have a different view on some of the conversation by your adversaries about the county of Allegheny. Yes, Your Honor. Virginia Scott, may it please the Court, on behalf of Allegheny County. I'll get straight to the issue with regard to the exhaustion. The evidence that has been established from the pleadings in this case and is in the docket establishes beyond question that Allegheny County was not a party to the EEOC proceeding. It is established that it was only the district attorney. If you look at what plaintiff included as an attachment to the amended complaint, the charge of discrimination, there is a space on this form for two employers to be listed. Names and addresses, telephone numbers, all contact information. It says on this form that we need this information in order to notify the employer that you are charging them with discrimination and for the EEOC to label them as a respondent. In this charge, Mr. Hildebrand left the second employer entirely blank. He refers to only one respondent, the district attorney. Well, he refers to Allegheny County district attorney. As one entity. It's not Allegheny County. Allegheny County was not a party to the EEOC proceeding. And it was not because Mr. Hildebrand never let the EEOC know that he was making a charge against Allegheny County because he didn't. And yet Allegheny County was informed. It was not. There's no evidence that Allegheny County was informed. It was not in any way. The right to sue letter was sent to Allegheny County, right? It was sent to the solicitor for Allegheny County for reasons that remain a mystery. Because Allegheny County was not a party to the proceeding. And nothing indicates. Is the district attorney's office a separate entity? Yes, they are. It is under Pennsylvania. It is a row office. And so it has a completely elected, its own elected official. They do their own hiring, their own firing. Allegheny County itself has no involvement with them whatsoever. There are some things such as, because it is a row office, many times people that are employed by the district attorney will argue that there's a dual employment situation. And this might be getting a little far afield of where we are, but just so the court understands it factually, what happens is that Allegheny County does distribute paychecks and things along that line. But has no involvement in any of the inner workings. Who sets the budget? That would, well there are certain things for the district attorney that would probably be set through the state with regard to their budget that Allegheny County has no involvement. In fact, with most of the row offices, and I would say maybe with all of them, that a lot of that is outside Allegheny County's control. But I do believe that money issues, that there is county money involved. But in terms of determining the employment situation of district attorney people, such as Mr. Hildebrand, Allegheny County is entirely out of it. Now going back to Dr. Tudor. I'm just wondering in terms of whether there's some sort of agency relationship. It's not alleged. If we look at the pleadings, Mr. Hildebrand never made some averment along the lines as that notifying the district attorney's office for the EEOC matter suffices to notify Allegheny County. Now because under the notice requirements and the exhaustion requirements, there are certain exceptions that the courts have recognized. And none of those would apply here because Mr. Hildebrand hasn't attempted to avail himself of that. He is relying upon the argument that he satisfies the pleading requirements by simply saying, I have exhausted all administrative remedies. In making that statement, however, he is only relying upon the averment that he made, which is a legal conclusion in his complaint, in his amended complaint. But he's asking this court to ignore the actual attachment he made to the amended complaint, which is the charge of discrimination. And when you look at the facts in the charge of discrimination, Allegheny County was not a respondent and was not involved in the administrative proceedings. Let me ask you this. The argument of your adversary is, in order to get over the status of limitations issues, we need to look at the intake questionnaire. Does that mean that if we do look at the intake questionnaire, that the charge should not be part of our consideration? The charge should be part of your consideration. And even if you do look at the intake questionnaire, it doesn't change the result as to Allegheny County in this case, because Allegheny County was not part of the charge, excuse me, to the intake questionnaire. The only entity listed on the intake questionnaire is the District Attorney's Office. So all right, so then let me put the question to you again, because I think maybe you spoke too quickly. Allegheny County is mentioned in the charge. It's not mentioned in the intake questionnaires, right? That is correct. Right. I'm so sorry. So I'm going to put my question to you again. If we take into account the intake questionnaire, right, by saying that based on Halecki, it's the same thing, and so it would be timely, if that's timely, the charge is not, right? That's how we get there. Yes. Right? So that would mean that Allegheny County should be out altogether, but it requires us not to consider the charge. Right. There are a number of ways that the court gets to the ultimate conclusion that Allegheny County is not properly in this case, and one of them is the way that the court has just now addressed, which is since it was not, even if this court goes so far as to say that you can rely upon an intake questionnaire in some instances, you still have to look at the intake questionnaire and say if it actually, in this case, included Allegheny County, which it didn't. And then you go to the charge of discrimination, which also didn't include Allegheny County. So regardless of whether these issues apply, the intake questionnaire versus the charge apply more to the district attorney because he's mentioned in both of them. Is any allowance made in these equal employment cases for pro se petitioners? I'm sorry? Is any allowance made for pro se petitioners? Well, I would say no, Your Honor, that if we're going to establish that standard, then all bets are off. The purpose behind the ADEA is that Allegheny County was supposed to be a party to the EEOC proceeding, and it wasn't. Further, if you look at the intake questionnaire, he does represent that he had assistance of counsel. I would also add that unless the court has additional questions on the ADEA exhaustion issue, I know I'm nearing the end of time, but questions had been raised about the 1983 matter. As Judge Roth had mentioned, that there is this issue that overwhelmingly the circuit courts have found that the ADEA is the exclusive remedy for an age discrimination claim. There is this one outlier circuit, the Seventh Circuit. One thing that counsel for Mr. Hildebrand stated in its brief was that this would be an issue of first impression for the Third Circuit. However, it is not. In the 2010 decision in this court of Rock, Rod Rock versus Mallory, it is cited in the brief, in the county's brief, 2010, the court did address the fact that at the trial court level, Mr. Rod Rock had brought an ADEA and a 1983 action. He agreed on appeal that his ADEA claim could not proceed because he'd only suit individuals, and there's no cause of action. Therefore, on appeal, it left open the issue, would the court allow an ADEA case to proceed? Is this a presidential opinion? It is, I believe not. But it is from this court, and it is of interest to the court, and I would submit to the court that the rationale that was listed in that decision acknowledged the other circuit courts that have all found that the ADEA is the exclusive remedy, and that this court adopt the reasoning that the ADEA is the exclusive remedy and there's no 14th Amendment claim. I am out of time. There would be more I would love to discuss. If there are no further questions, though, I would simply submit that Allegheny County relies upon the arguments that are presented in its brief. Okay. Thank you so much. Good morning, Your Honors. Judge Roth, I believe that as to the district attorney, you must consider the attached charge and Judge Greenway, as to the district attorney, you cannot rely upon the intake questionnaire. I did not get involved, the DA did not get involved in the timeliness argument until the amended complaint was filed. The county had argued, essentially, that they had not been named in the charge. When they attached the charge, it was very clear that the charge was untimely. And they incorporated the charge into the complaint. It was clear that it was untimely. At that point, I filed my timeliness argument based on the amended complaint. Nothing that happens in the initial complaint has any effect on the DA's charges of untimeliness. Then after they had filed that complaint, they didn't meet their responsibilities under the pleading rules. First, Judge Schwab had asked them to identify when they first went to the EEOC. Their duty at that point was to tell him that they filed an intake complaint at the EEOC so many days ago. They knew exactly what the judge wanted, they didn't answer it. They simply gave him the charge. When I filed my motion to dismiss under the amended complaint, under Rule 15, they had the opportunity to replead a second amended complaint and say, but we also filed the intake charge. They chose not to do that. By not doing that, they wasted Judge Schwab's time to consider my argument. They wasted my time in making my initial argument based on the charge. And they wasted Allegheny County taxpayers' money in allowing me to make an argument based on a charge and then waiting to come up to this court to argue that Judge Schwab shouldn't have done that. They were dilatory, they were undue delay, and as to me, they shouldn't be allowed to consider that intake questionnaire. The, they simply ignored all the opportunities that they had to do it. Are we supposed to ignore Holowecki? Pardon me? I said, are we supposed to ignore Holowecki? As, you don't have to ignore Holowecki, all you have to do is apply the pleading rules. They were untimely in raising that issue. They had plenty of opportunities to do so. When did they first present the intake questionnaire? In their brief in response to my motion dismissed. So instead of filing an amended complaint, they gave you the intake questionnaire? Yes, but if they had filed... They said they could have filed an amended complaint. They could have filed an amended complaint, then they didn't. And it led me to, and the judge, to write the decision without the amended complaint. In response... But the intake questionnaire was before the judge when he wrote the opinion. Yes, sir, it was. All right. It was, Your Honor. In response, Judge Guignoy, to your question about 9C and Iqbal, Iqbal itself answers that question. Iqbal, toward the end of the opinion, just about in the last paragraph or two, addresses the pleading standards under Rule 9B, and the difference between general pleading and particular pleading. And in there they say that 9B does not excuse the particularity required under Rule 8A. It just distinguishes between particularity in 9B and generality in 9B, but you still have to meet 8A to do it. This court followed the same reasoning in a non-precedential opinion in Pilecki-Simcoe v. Chubb Institute 443 FedEx 754. Again, it was non-precedential, but the same rationale. And 9C is essentially the same language as is 9B, making the difference between generally pleading as opposed to pleading with particularity. If there are no questions, I'm done. Okay, thank you very much. To follow up on counsel's comments, the Allegheny County District Attorney's Office cited Arthur v. Maersk, which is a Third Circuit opinion concerning the liberality of Rule 15B. And it indicates that Rule 15A counsels in favor of an amendment even when a party has less than perfect pleading. It's important for this court to understand the timing of the different issues being raised. In my experience with pleading conditions preceding, my complaints have all had basically the same general language, that yes, plaintiff has exhausted his administrative remedy. He is correct. The District Attorney's Office did not raise an issue of timeliness in response to the initial complaint. We got the opinion back from the District Court as to the first set of motions to dismiss, and we responded in kind. That issue, the only issue as to the pleading deficiency of the EEOC, of the exhaustion of administrative remedies was, did you include the county? Was the county included? And we did an amended complaint to answer that particular deficiency identified by Judge Schwab. It was then in response to our amended complaint that both parties looked at the charge and said, oh, there's a timeliness issue. And so, of course, we added the questionnaire. So we don't think that the pleading rules, they don't preclude what happened, and certainly it doesn't preclude the situation of 9C taking the day when it comes to how you should plead condition preceding. Okay, thanks so much. Thank you very much. Thank you all, counsel. The case was well-argued and well-briefed, and we'll take it under advisement.